*The final accounting in* THOMAS T. WOODRUFF's *Estate.*

EXTRAORDINARY dividends belong to the person holding a life interest in the stock upon which such dividends are earned.

LUTHER R. MARSH, *for Executor.*
RICHARD S. EMMETT *and* SCHELL & HUTCHINS, *for Objectors.*
R. S. EMMET, *for other Objectors.*
LUTHER B. MARSH, *for the Executor of T. T. Woodruff.*

THE SURROGATE.   The testator, Thomas T. Woodruff, died April 15, 1855, leaving a wife, five sons, and four daughters.   His will makes specific devises to the daughters, gives a life estate in the residuum (in lieu of dower) to his widow, and the remainder over to his sons.

Marcus P. Woodruff is the sole surviving executor. Among the assets which came into executor's hands were 904 shares of the capital stock of the Manhattan Gas Light Company, of the par value of $50 per share.  An act of Legislature, passed April 17, 1855 (two days after testator's death) authorized an increase of the capital stock of this corporation from two to four millions of dollars.   On the first of October, 1855, the corporation passed a resolution conformably to this act, and ordered the new stock to be apportioned among the old stockholders, share for share, declaring an extraordinary dividend out of the surplus profits of the corporation (which had been accruing for years past), up to July 1, 1855, of $18 per share, and allowing this amount to be credited to each old stockholder who should accept new stock, as payment to that extent upon such new stock.

Marcus P. Woodruff received the new stock, had the extraordinary dividend credited upon it, and paid up the balance with moneys derived from the sale of assets of the estate. He treated the new stock as altogether assets or capital, and no part of it as income or profits of the estate. He paid the regular and usual dividends to his mother during her life; but neither he or she ever seems to have considered that eighteen-fiftieths of the new stock were hers, as part of her income from her husband's estate.

The widow died intestate, and the four sons succeed to the residuum under their father's will. The sons and daughters alike succeed to their mother's property; and the daughters now claim that so much of the new stock as was paid for by the extraordinary dividend of surplus profits on the old stock, belongs to Mrs. Woodruff's next of kin, as income accruing in her lifetime. The executor, who is also a residuary devisee, with his four brothers, maintains that all the new stock is capital of the estate, like the old, and goes to them, as that did, under the residuary clause.

In other words, the question arising upon this accounting is, whether extraordinary dividends, out of surplus profits, declared in addition to or in excess of the ordinary and regular dividends, upon the stocks held by an estate, are to be considered as income of the testator's estate, and therefore belonging to the life tenant, or as capital of the estate, and therefore belonging to the remaindermen.

The question is by no means a novel one. It has gone through the Court of Chancery in England, and thence up to the House of Lords; had been considered ten or fifteen years ago as settled in favor of the remaindermen, but has been at last finally and definitely determined in the contrary direction in England, and, I may safely assume, in this country.

The conclusion which had thus been arrived at is surely warranted alike by good sense and sound principles of

legal construction, and would so commend itself to me were the question a perfectly new and open one at this day.

In the case of *Brander* v. *Brander*, 4 *Vesey*, 800, the Bank of England declared an extraordinary profit of £1,000 in five per cent annuities, upon the shares of its stock held by the estate, and the tenant for life filed his bill claiming the payment thereof to him. The Lord Chancellor held that the annuities were capital and dismissed the bill. This is the leading case on this side, and its rulings were followed for some years in other cases, in spite of the doubts as to its correctness, which were from time to time expressed by the English Courts.

Thus, three years afterwards, the House of Lords reaffirmed the principle in the case of *Irvine* v. *Houston*; and subsequent Chancellors, in the cases of *Paris* v. *Paris*, 10 *Vesey*, 185 ; and *Witts* v. *Steere*, 15 *Vesey*, 363, maintained it, though expressing great doubt on the subject. In *Paris* v. *Paris*, Lord Eldon said, in reference to the former adjudications, " I confess I have had great difficulty in stating the principle that led to them." And in *Witts* v. *Steere*, Lord Erskine " intimated that if the question were an open one, he should hold differently."

The next case is that of *Barclay* v. *Wainwright*, 14 *Vesey*, 66, decided in 1807, in which Lord Eldon held the *cestui que trust* entitled to an extra dividend ; thus, for the first time, overturning the former decisions. It is true that the Lord Chancellor discovered or alleged a slight difference in the facts of the two cases ; but on a comparison of the reports this difference is not so important.

The English law remained in this unsettled condition until the case of *Price* v. *Anderson*, 15 *Simons*, 473, in 1849, where an extra dividend of twelve and one-half per cent upon insurance stock was declared to belong to the life tenant. This decision was followed by that in *Johnson* v. *Johnson*, 5 *Law and Equity Reports*, 164, where

a bonus or extra dividend of £10 per share, added to the usual dividend of £3 per share, was held to be income and to belong to the *cestui que trust.* · I apprehend that the rule is therefore settled in England. ·

In this country, the precise question has never but once, I believe, been determined. In *Cogswell* v. *Cogswell,* 2 *Edwards,* 240, the Vice-Chancellor ruled the tenant for life entitled to "whatever advantage results from an increase in the annual value of the property." But the case was one of ordinary dividends.

The case of *Clapp* v. *Astor,* 2 *Ed. Chancery R.,* 384, proceeded upon the general rule that dividends cannot be apportioned. In that case the dividend was held to belong to the person owning the use of the stock for the time being.

The single American case in which the question now before me has been met on all points, and adjudicated, is that of *Clarkson* v. *Clarkson,* 18 *Barbour R.,* 646. The Court there held, after an able and thorough review of authorities, such as I have cited, that where all the gains, profits, income and proceeds of the estate, were devised to a life tenant, an extra stock dividend of sixty per cent would belong to such life tenant. The facts of the case, *mutatis mutandis* are almost identical with those of the present case.

There is no dispute in the present case that the entire income of the estate did belong, under the will, to the life tenant. There can be no doubt that her legal interests in the estate commenced immediately on the death of the testator. If, therefore, I am correct in holding the dividend of eighteen dollars per share to be income of the estate, it was the duty of the executor so to have charged himself; and the objection founded upon this item is well taken. It belonged to the life tenant.

The question of estoppel was not much relied upon in the argument before me, nor is any allusion made to it in the points of the counsel for the executor. It is suffi-

cient to say that I do not find the admissions of Mrs. Woodruff to have been such as would legally bind the parties objecting.

Nor do I perceive the force of the argument that the objectors have no right to object on the accounting of Thomas T. Woodruff's executor, but must wait for the accounting of their mother's administrator. They would be estopped by this accounting and the decree, if they did not raise the objection. The decree, therefore should declare the dividend in question to be no part of the capital of T. T. Woodruff's estate, but to have belonged to his widow as income, and be payable to her administratrix.

[The form of the decree was settled; the objectors are declared thereby to be the owners of and entitled to eighteen-fiftieths of each of the nine hundred and four shares of stock in the Manhattan Gas Light Company. The question coming up on the settlement, as to the duty of the executor to account, showing the income of the estate, the Surrogate held that such an account must be made. The assets of the estate now already accounted for, and in the hands of the executor, to be distributed.]